UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

VERNON JOHNSON,          )
                                        )
        Petitioner,        )
                                        )
        vs.                  )     Case No.  4:22-cv-00978-AGF
                                        )
UNITED STATES OF AMERICA,   )
                                        )
        Respondent.      )

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Vernon Johnson's motion filed under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  On September 13, 2019, Petitioner, while represented by privately retained counsel, pled guilty to two counts: (1) knowingly or intentionally possessing a stolen firearm in violation of 18 U.S.C. 922(j) and 18 U.S.C. § 924(a)(2); and (2) knowingly and willfully conspiring with other persons to commit offenses against the United States in violation of 18 U.S.C. § 371.  The Court accepted this plea and set sentencing for December 18, 2019.

On December 2, 2019, the Court granted Petitioner's pro se motion for appointment for new counsel.  Petitioner's sentencing was postponed by several motions for continuance.  Then, on March 4, 2020, the Petitioner filed a motion to withdraw his guilty plea, which this Court denied following a hearing.  On December 8, 2020, the Court sentenced Petitioner to 120 months' imprisonment.  On May 27, 2022, the denial of Petitioner's motion to withdraw his guilty plea was affirmed on direct appeal.

Petitioner now moves to set aside his conviction and sentence pursuant to 28 U.S.C. § 2255, claiming three grounds of ineffective assistance of plea counsel. Petitioner claims that counsel was ineffective in: (1) failing to move to suppress or exclude dispatch recordings and alleged statements made in 911 calls to police as inadmissible hearsay, (2) failing to object to the Magistrate Judge's findings in her Report and Recommendations ("R&R") to the undersigned that officers received consent to enter and search an apartment, and (3) failing to argue lack of reasonable belief and probable cause as grounds in his motion to suppress.  ECF No. 1.

As the record conclusively demonstrates that Petitioner is not entitled to relief, the Court will deny Petitioner's motion without a hearing.

## BACKGROUND

### Criminal Pretrial Proceedings

I.    Indictment and Pretrial Motions

On April 25, 2018, Petitioner was indicted on one count of being a felon in possession of a firearm, based on evidence that Petitioner had on February 21, 2018, possessed a firearm and fired multiple shots inside the apartment of his girlfriend, Ashley Puryear, including multiple shots fired into the bedroom where Ms. Puryear's infant was sleeping.  *United States v. Johnson*, Case No. 4:18-cr-00348-AGF (E.D. Mo.), ECF No. 1.[1]  Petitioner retained private counsel, Jeffrey Goldfarb ("plea counsel"), and granted additional time, until August 29, 2018, to file pretrial motions.

---

[1]    References to the underlying criminal case are designated as "Crim. ECF No. ___").

The Magistrate Judge scheduled a status hearing on September 18, 2018, regarding the failure to file any pretrial motions or waiver of such motions. In advance of the hearing, plea counsel filed a motion for leave to file pretrial motions out of time, in which he apologized to the Court for missing the deadline, together with Petitioner's pretrial motions, including a motion to suppress evidence. The motion to suppress detailed the evidence leading up to the officers' entry into the apartment, and argued, in part, that the officers lacked either consent or exigent circumstances to justify their entry.

Following the Government's response to the motions, the motion hearing was continued several times. Then, the Government filed a sealed, ex parte motion for a protective order, asserting that jail calls established that Petitioner was engaged in witness tampering. The Magistrate Judge entered a sealed protective order governing the manner of disclosure of Jencks materials, on January 2, 2019.

On January 3, 2019, a four-count superseding indictment was filed which added a charge being a felon in possession of ammunition (also arising out of the events of February 21, 2018), and two counts of tampering with a witness, Ms. Puryear, between February 22, 2018, and continuing through March 30, 2018 (Count Three), and beginning May 14, 2018, and continuing to the date of the indictment (Count Four).

Thereafter, plea counsel timely filed amended pretrial motions, seeking suppression of the firearms and ammunition, as well as evidence of the calls to police.

II.    Evidentiary Hearing on Motion to Suppress

On February 11, 2019, the Magistrate Judge held an evidentiary hearing on the motion to suppress.  At the hearing, the Government presented the testimony of Jadienne

Davidson, the property manager of the apartment building where the firearm was found; Sergeant Kelly Fisher and Officer Mary Edmond, with the St. Louis Metropolitan Police Department; and ATF Agent Jeffrey Thayer. Plea counsel crossed-examined these witnesses and presented the testimony of Ms. Puryear. In response to questioning by plea counsel, one Government witness acknowledged that Officer Klein, who had written the police report, had not been called to testify, and advised that sometime after the date of the events, he had passed away.

The following evidence was presented at the evidentiary hearing. On February 21, 2018, at 7:53 a.m., officers received a call from a resident of the apartment building at 1600 Locust who reported that she heard screaming, someone saying, "Don't do that," and a lot of loud noises. She identified the apartment as 605 (which the officers later learned was not the correct apartment). She identified her own apartment as 505, and arranged to buzz the officers into the building as it was a secure building.

Officers Klein and John Moton responded to the call. Upon arrival, officers responded to apartment 605. The occupant of apartment 605 stated that no one inside was in distress, so the officers left the building.

Several minutes later, at approximately 8:29 a.m., officers received another call from a woman identified herself as Ms. Puryear's friend who said she was reporting an emergency at 1600 Locust. She said her best friend (Ms. Puryear) had just texted her saying, "I think I'm going to die. He's shooting inside the apartment." The caller said she believed that Ms. Puryear was referring to her boyfriend shooting a gun, and that Ms. Puryear was in apartment 506. She said Ms. Puryear lived there with her boyfriend

4

Vernon, and that she had a four-month-old baby. She advised that Vernon's older sister said that he was bipolar. She said she called the police because Ms. Puryear could not do so herself.

Officers Klein and Moton were the first on scene in response to the second call. Additionally, Officers Edmond and Tawana Sims, as well as Sergeants Fisher and Kevin Bentley, responded to the scene. Upon arrival, the officers gathered at the apartment building's leasing office and attempted without success various strategies to get in contact with the tenant of apartment 506, Ms. Puryear. The officers called Ms. Puryear's phone, requested the dispatcher to call her cell phone, checked for her vehicle in the vicinity, and knocked on neighbors' doors. Then, the officers called Ms. Puryear's emergency contact, her father, who was also unsuccessful in reaching her. Finally, the officers obtained an apartment key from the property manager Davidson and knocked before letting themselves into apartment 506.

Upon entrance, the officers observed Ms. Puryear walking towards the front door, and after confirming her safety, observed Petitioner emerge from the bedroom unclothed. The officers directed Petitioner to lay on the ground and handcuffed him while conducting a safety sweep. The officers observed the apartment in disarray with liquid, live cartridges and shell casings on the floor, bullet holes in walls and doors (and specifically Ms. Puryear's child's room door). Ms. Puryear was taken down the hall from the apartment to speak with officers. Ms. Puryear told officers that Petitioner extended a gun behind him and fired multiple shots into and adjoining bedroom belonging to her and Petitioner's shared child, who was found inside the apartment. Ms. Puryear told Officer

5

Klein that the firearms could be located in the bedroom nightstand, and she saw Officer Klein enter the apartment and did not object to him doing so.

Officers located a .40 S&W caliber semi-automatic pistol and a .45 caliber semi-automatic pistol in the top drawer of the nightstand on the right side of the bed in the master bedroom. Officers observed .40 and .45 caliber spent cartridges and live cartridges on the floor near the kitchen area and on the bed and floor in the master bedroom. There was ballistic damage to the master bedroom door, the north wall of the master bedroom, the north wall of the child's bedroom, the door of the small bedroom, and on the wall adjacent to the door of the small bedroom. There was also ballistic damage to the window of the master bedroom's window blinds and window frame. Petitioner was then placed under arrest.

III.    Proceedings Following the Evidentiary Hearing

Following the evidentiary hearing, the parties submitted post-hearing briefs. Plea counsel filed a 29-page post-hearing brief that discussed the facts and supporting case authority (Crim. ECF No. 75), and the Government filed a response. The Magistrate Judge issued an R&R denying the motion to suppress and finding that exigent circumstances supported the warrantless entry into Ms. Puryear's apartment.

Plea counsel thereafter filed objections to the R&R, objecting both to the finding of exigent circumstances and to the finding that after entry, Ms. Puryear provided consent to enter the apartment and retrieve the firearms; plea counsel further asserted the landlord lacked authority to provide consent. Plea counsel cited case law in support of these arguments. Crim. ECF No. 90. The Government responded to the objections.

6

On August 12, 2019, the Court issued its Order adopting the R&R, overruling Petitioner's objections, and denying Petitioner's motion to suppress evidence.

IV.    Waiver of Indictment and Plea

On September 12, 2019, a Second Superseding Indictment was filed, deleting Counts Three and Four, and charging Petitioner only with one count of being a felon in possession of a firearm, and one count of being a felon in possession of ammunition, related to the events of February 21, 2018. Crim. ECF No. 105.  Each count carried a maximum penalty of ten years' imprisonment.

On September 13, 2019, Petitioner waived his right to indictment and pled guilty to a superseding information that charged Petitioner with one count of possession of a stolen firearm and one count of conspiracy to possess a firearm as a felon.  Count One carried a maximum penalty of ten years' imprisonment and would not subject Petitioner to a possible sentence as an armed career criminal, and Count Two carried a maximum penalty of only five years' imprisonment.  Petitioner knowingly and voluntarily waived his right to indictment, acknowledging under oath that he understood his right to indictment, and that no one had made any promises, or offered him anything, or threatened him to get him to waive his right to indictment.  Crim. ECF No. 140 at 12-13.

Pursuant to a written plea agreement, in exchange for Petitioner's guilty plea to the above-noted charges, the Government agreed that no further federal prosecution would be brought in this Court relative to Petitioner's violation of federal law known to the Government at the time of the plea and arising out of the events set forth in the original and superseding indictments, including possession of a firearm and witness tampering.

7

The parties agreed to make a nonbinding joint recommendation for a sentence of 105 months' imprisonment on Count One, to run consecutive to 60 months on Count Two, for a total of 165 months' imprisonment. The plea agreement also contained a waiver of rights to appeal all non-jurisdictional, non-sentencing issues, including any issues related to pretrial motions and discovery.  Further, in the plea agreement, Petitioner waived his right to contest his conviction or sentence in any post-conviction proceeding except for claims of ineffective assistance of counsel and prosecutorial misconduct.

At the time of his plea, the Court advised Petitioner of his rights and determined that Petitioner was competent to enter a plea.  Petitioner acknowledged under oath that he had had enough time to discuss both his case and the plea agreement with his attorney; that he was satisfied with his attorney's representation of him in the case; that there was not anything his attorney should have done, but did not do in representing him, nor anything he asked his attorney to do that he failed or refused to do; and that his attorney had answered any questions he had.  Crim. ECF No. 140 at 3-4, 15-16.

The Court also fully reviewed Petitioner's rights with him, including his right to an attorney and to have an attorney appointed to represent him if he could not afford an attorney; his right to proceed to trial; and his right to subpoena witnesses to testify on his behalf.  He confirmed that he had fully discussed the plea agreement with his attorney and understood its contents.  *Id*. at 16- 19. He confirmed that he understood the elements that the Government would have to prove in order for him to be found guilty after a trial. And the Court specifically advised him, "if you don't think the prosecutor could prove those elements beyond a reasonable doubt, you understand I'm not terribly interested in

accepting your plea at this moment . . . . Then I'd want you to spend a little more time

talking to your attorney." *Id*. at 24-25. Petitioner confirmed that he understood.

The Court described how the Sentencing Guidelines and sentencing process

operated, and reviewed the agreements contained in the plea agreement, as well as the

maximum penalties. The Court also reviewed the waiver of appeal provisions contained

in the plea agreement. After summarizing the waiver of appeal of non-sentencing issues,

the Court specifically discussed with Petitioner his prior motions to suppress.

> THE COURT: Let's just talk about this for a moment, sir, because obviously, you are aware that earlier in these Court proceedings you filed some motions to suppress evidence.

> THE PETITIONER: Yes.

> THE COURT: There was a hearing on that, and the magistrate judge overruled your objections and denied your motion to suppress. And I reviewed the matter de novo, and I also denied the pretrial motions that you had filed; do you understand, sir?

> THE PETITIONER: Yes.

> THE COURT: And you understand, sir, that by virtue of your guilty plea, and also by virtue of the waiver in this agreement, you understand that you could be deemed to have given up your right to challenge those rulings to the Court of Appeals?

> THE PETITIONER: I understand.

> THE COURT: All right. And so to the extent that you believe that any search, any seizure, any statements made by you were obtained in violation of your rights, part of what you are giving up is your right to challenge those rulings to the Court of Appeals, or in any post-conviction proceeding; do you understand?

> THE PETITIONER: I understand.

> THE COURT: Have you fully discussed that with your attorney?

> THE PETITIONER: I have discussed it.

*Id.* at 46.

The Court also reviewed the scope of Petitioner's waiver of his right to contest his conviction or sentence in any post-conviction proceeding. Petitioner confirmed that he did not have "[a]ny question at all about any of those waiver provisions." *Id.*

Finally, Petitioner confirmed that other than what was in the plea agreement or had been discussed at the hearing, no one had made any promises to him, or offered him anything to get him to plead guilty; that no one had represented any other facts that he was relying on in pleading guilty that had not been discussed at the hearing; and that no one had threatened him to get him to plead guilty. *Id.* at 46-47.

Petitioner thereafter confirmed that he was pleading guilty of his own free will, and that he did not have any questions for the Court about anything that had been discussed. The Court ascertained the factual basis for the guilty plea, accepted the plea as knowing, intelligent, and voluntary, and set the sentencing for December 18, 2018.

**Motion to Withdraw Guilty Plea and Sentencing**

On December 2, 2019, just a few weeks before the sentencing, Petitioner filed a pro se motion seeking to terminate plea counsel and requesting appointment of new counsel. The pro se motion, filed under seal, contained a litany of complaints about plea counsel, including claims of ineffective assistance.

On December 10, 2019, the Court held a hearing on Petitioner's pro se motion that included an ex parte proceeding with Petitioner and plea counsel. Petitioner said he was not comfortable with plea counsel as his attorney and wanted a new attorney. Following the hearing, the Court permitted plea counsel to withdraw as counsel, and appointed new

10

counsel, Joseph Hogan (hereinafter "substitute counsel"), to represent Petitioner. Substitute counsel thereafter filed motions to continue the sentencing hearing, which was ultimately continued to March 10, 2020, based on these motions.

On March 4, 2020, more than five months after his plea, and less than one week before the rescheduled sentencing hearing, Petitioner filed a motion to withdraw his guilty plea, and to continue the sentencing hearing. Crim. ECF Nos. 133 & 134. In support of his motion, Petitioner asserted three grounds: (1) prosecutorial misconduct and a due process violation based on the prosecution's failure to disclose the fact of Officer Klein's death; (2) ineffective assistance of plea counsel based on counsel's failure to adequately communicate, missing the deadline to file pretrial motions, failing to include supporting caselaw in his motion to suppress, and failing to adequately negotiate with the Government; and (3) legal innocence based on his assertion that there were no exigent circumstances and no probable cause to enter the apartment.

The Court held a hearing on Petitioner's motion to withdraw his guilty plea on September 29, 2020. Petitioner did not present any witnesses or new evidence at the hearing. On November 3, 2020, the Court denied Petitioner's motion to withdraw his guilty plea and rejected each of Petitioner's arguments as without merit.

The Court held that there was no basis to suggest that Officer Klein's death was exculpatory or that the failure to disclose his death constituted prosecutorial misconduct. Crim. ECF No. 153 at 17. Regarding the ineffective-assistance claim, the Court found that Petitioner knew each of the events of which he complained regarding plea counsel's performance at the time of his plea but failed to raise the issue and, instead, confirmed

11

under oath that he was satisfied with counsel's representation and there was nothing the attorney failed to do. *Id.* at 18. Further, the Court held that Petitioner failed to show that he was prejudiced by anything plea counsel did or failed to do. *Id.* at 21.

Finally, as to Petitioner's claim of legal innocence, the Court held that Petitioner failed to present any new or further arguments to support any basis for the Court to reconsider the decision that exigent circumstances justified the search. *Id.* at 23.

On December 8, 2020, the Court sentenced Petitioner to an aggregate term of 120 months' imprisonment—nearly four years less than the joint recommendation in the plea agreement— followed by two years of supervised release. Crim. ECF No. 161. On December 9, 2020, substitute counsel filed a timely notice of appeal. Crim. ECF No. 261.

**Direct Appeal**

On direct appeal, Petitioner challenged the denial of his motion to withdraw his guilty plea. The Eighth Circuit affirmed, finding no abuse of discretion or reversible error in the Court's ruling. Crim. ECF No. 1732.

**Motion to Vacate**

As noted above, Petitioner asserts three claims in his pro se motion under § 2255. He argues that plea counsel was ineffective for: (1) failing to move to suppress or exclude as inadmissible hearsay the 911 calls by the neighbor and by Ms. Puryear's friend, and the statements made in those calls; (2) failing to object to the Magistrate Judge's finding in the R&R that police received consent to enter and search Ms. Puryear's apartment; and (3) failing to argue a lack of reasonable belief and probable cause as grounds in his motion to suppress. The Government responds that each claim is without merit.

## <u>DISCUSSION</u>

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from a sentence imposed against him on the ground that "the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  Section 2255 rights can be waived in a plea agreement if a defendant knowingly and voluntarily makes the "decision to be bound by the provisions of the plea agreement, including the waiver provisions."  *DeRoo v. United States*, 223 F.3d 919, 923 (8th Cir. 2000).  However, a petitioner's ineffective assistance of counsel claim is properly raised under § 2255 rather than on direct appeal. *United States v. Davis*, 452 F.3d 991, 994 (8th Cir. 2006) (citation omitted).

To establish ineffective assistance of counsel, a petitioner must meet the two-prong test established by *Strickland v. Washington*, 466 U.S. 668 (1984): (1) he "must show that counsel's performance was deficient," so deficient that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," and (2) he must show "that the deficient performance prejudiced the defense," in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687, 690, 694.  Prejudice in the context of a guilty plea often requires the petitioner to show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  "A reasonable probability is a

13

probability sufficient to undermine confidence in the outcome or a substantial, not just conceivable, likelihood of a different result." *Meza-Lopez v. United States*, 929 F.3d 1041, 1044-45 (8th Cir. 2019) (citation omitted).

"Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Id.* at 1045 (citation omitted). "Instead, [j]udges should . . . look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* In particular, a "defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Adams v. United States*, 869 F.3d 633, 635 (8th Cir. 2017) (citation omitted).

## Ground 1: Failing to Seek to Exclude or Suppress 911 Calls as Hearsay

Petitioner argues that the 911 calls by the neighbor and by Ms. Puryear's friend, and the statements made therein, constitute inadmissible hearsay such that plea counsel should have moved to exclude them under the Federal Rules of Evidence. Petitioner argues that counsel's failure to move to exclude these statements as hearsay allowed the Court to rely on the statements in finding that officers reasonably believed exigent circumstances supported a warrantless entry into the apartment, which led to the denial of Petitioner's motion to suppress. Petitioner maintains that, had counsel moved to exclude the 911 calls, the motion to suppress would have been granted, and Petitioner would have gone to trial rather than entered into a guilty plea. *See* ECF No. 2 at 7-13.

Petitioner's arguments are without merit. As an initial matter, Petitioner's claim is contradicted by his sworn representations during the plea colloquy—at which the Court

14

specifically discussed the pretrial motion to suppress—that he was satisfied with his attorney and that there was nothing his attorney should have done that he did not do.

In any event, any motion to exclude evidence of the 911 calls from the suppression hearing would have been futile. This is because "[c]ourts may consider hearsay evidence at suppression hearings and it is not uncommon for different officers to testify at these hearings in various capacities."[2] *United States v. Rowe*, 878 F.3d 623, 626 (8th Cir. 2017); *see also United States v. Raddatz,* 447 U.S. 667, 679 (1980) ("At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial."); *United States v. Boyce*, 797 F.2d 691, 693 (8th Cir. 1986) ("[T]he right of confrontation does not apply to the same extent at pretrial suppression hearings as it does at trial.").

The 911 calls and text messages were also likely admissible as an exception to the hearsay rule, as an excited utterance under Federal Rule of Evidence 803(2). And, as discussed in this Court's Order denying Petitioner's motion to withdraw his guilty plea, the evidence would have been admissible at the evidentiary hearing as non-hearsay to explain what the officers relied on in their investigation and to support probable cause. Crim. ECF No. 153 at 25.

Thus, any failure to move to exclude hearsay does not constitute ineffective assistance. *E.g.*, *Dodge v. Robinson*, 625 F.3d 1014, 1019 (8th Cir. 2010) (an attorney's

---

[2]    Further, substitute counsel in fact raised the hearsay issue in Petitioner's motion to withdraw the guilty plea, in connection with challenging the Court's findings on Petitioner's motion to suppress. *See* Crim. ECF No. 133 at 22-25. And as noted above, that motion and all the arguments raised therein were rejected by the Court.

failure to raise a meritless argument does not constitute ineffective assistance).  The Court will deny Ground One.

## Grounds 2 and 3: Failing to Object to Magistrate Judge's R&R Regarding Consent or to Challenge Reasonable Belief and Probable Cause

In Ground Two, Petitioner argues that plea counsel was ineffective because he "failed to object to the Magistrate Judge's finding of consent in the R&R."  ECF No. 2 at 14.  In Ground Three, Petitioner argues that plea counsel was ineffective because he "failed to argue lack of reasonable belief and probable cause as grounds in his motion to suppress."  ECF No. 2 at 11.

First, the Court reiterates that these claims are refuted by Petitioner's sworn assertions during the plea colloquy that he was satisfied with his counsel's performance.  But more importantly, as noted above, plea counsel *did* raise precisely the arguments and objections Petitioner highlights in Grounds Two and Three.

As to Ground Two, in his objections to the R&R, plea counsel devoted an entire section to objecting specifically to the Magistrate Judge's finding of consent.   Crim. ECF No. 90 at 3.  Moreover, substitute counsel expanded on that same argument in his motion to withdraw the guilty plea.  Crim. ECF No. 133. Thus, both plea counsel and substitute counsel each argued, unsuccessfully, that officers lacked consent to enter the apartment.

Likewise, as to Ground Three, plea counsel argued in detail in both his motion to suppress and his objections to the R&R that officers lacked exigent circumstances supported by reasonable belief or probable cause.  Crim. ECF Nos. 52, 75 and 90.  And,

16

again, substitute counsel renewed this issue, specifically adding the lack of probable cause as a ground to disprove exigent circumstances.  Crim. ECF No. 133 at 18-25.

Thus, Petitioner's Grounds Two and Three are contradicted by the record. Further, this Court's rejection of Petitioner's challenges regarding consent, reasonable belief, and probable cause in denying both the motion to suppress and the motion to withdraw the guilty plea—and the Eighth Circuit's affirming of the latter decision—all confirm that Petitioner's underlying arguments are without merit.  The Court will deny Grounds Two and Three.

**Evidentiary Hearing**

As noted above, an evidentiary hearing is not warranted in this case as "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see also Guzman-Ortiz v. United States*, 849 F.3d 708, 715 (8th Cir. 2017) (holding that a district court may forego an evidentiary hearing before dismissing a § 2255 motion where "accepting the petitioner's allegations as true, the petitioner is not entitled to relief") (citation omitted).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Vernon Johnson's motion filed under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence is **DENIED**.

**IT IS FURTHER ORDERED** that this Court will not issue a Certificate of Appealability as Petitioner has not made a substantial showing of the denial of a federal constitutional right as required by 28 U.S.C. § 2253(c)(2).

An appropriate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 15th day of July, 2025